DISTRICT OF OREGON: ss, AFFIDAVIT OF BOBBY GUTIERREZ

**Affidavit in Support of a Criminal Complaint**

I, Bobby Gutierrez, being first duly sworn, hereby depose and state as follows:

**Introduction and Agent Background**

1. I am a Special Agent with the Federal Bureau of Investigation and have been since January 2021. I am currently assigned to the FBI's Portland Division and am part of the Transnational Organized Crime and Violent Gang Squad. I presently work a variety of criminal and national security matters, including the investigation of violent crimes, gangs and narcotics, in addition to the apprehension of federal fugitives. During my 21-week training at the FBI Academy, Quantico, Virginia, I received training in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. In my current area of responsibility, I work with law enforcement officers who have experience and training in investigating coded communication involving the distribution of controlled substances and gang affiliations. I have used this training and experience, as well as the training and experience of other law enforcement officers familiar with this investigation, to demonstrate how these criminal enterprises plan, organize and carry out criminal activity. In 2026, I was selected as the District of Oregon's Freedom 250 Hometown Hero for my work in organizing and executing numerous downtown fentanyl enforcement missions. I have previously testified as an expert in federal court on fentanyl use, withdrawal, and fentanyl user/buyer behavior.

2. Prior to being employed with the FBI, I was a Licensed Master Social Worker (LMSW) in the state of Arizona for approximately six years. As a LMSW, I was responsible for creating and implementing target treatment plans for court-ordered criminal offenders with a

chronic history of substance use disorders, domestic violence, and child abuse. In addition to my employment as an LMSW, I was a behavioral health consultant for Medicare/Medicaid and oversaw medical and mental health treatment for patients residing in assisted living homes and skilled nursing facilities. As a consultant, I was responsible for auditing medical treatment plans, levels of care, and medications to include psychotropic and Schedule II narcotic pain medications.

3. This affidavit is based upon a joint investigation conducted by the Portland Police Bureau (PPB) Central Precinct Bike Squad and Neighborhood Response Team (NRT), the United States Attorney's Office (USAO), and the Federal Bureau of Investigation (FBI). Since 2023, in response to the influx of fentanyl dealers operating in downtown Portland, Oregon, Investigators, to include these teams and others, have conducted a series of ongoing investigations targeting these fentanyl dealers working primarily in the area of downtown, Portland, Oregon to include neighboring communities. These downtown fentanyl enforcement missions have been aimed at reducing the amount of fentanyl in downtown Portland, Oregon. Since these missions started, we have observed a noticeable reduction in the number of fentanyl dealers operating in downtown Portland, as well as reductions in fatal drug overdoses and the criminal activity associated to the sales of fentanyl, to include a reduction in gun violence, within the core of the city. This case arose from the most recent mission.

**<u>Purpose of Affidavit</u>**

4. This affidavit is submitted to support a criminal complaint and arrest warrant for **GERSON HERNANDEZ-RAMOS**, a Hispanic male, date of birth 09/xx/1999 (hereinafter referenced as "**HERNANDEZ-RAMOS**"), for committing the felony crime of Possession with Intent to Distribute 40 grams or more of Mixture and Substance containing Fentanyl, a Schedule II

controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(B).

5. I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from oral and written reports of other law enforcement officers; and, from records, documents and other evidence obtained during this investigation. I have obtained and read official reports prepared by law enforcement officers participating in this investigation and in other related investigations.

**Confidential Informant**

6. This investigation involves the use of a Confidential Informant (CI) who provided the information by his/her own free will. CI is working with Investigators and provided actionable information to law enforcement in exchange for monetary consideration. No promises or guarantees were made by investigators to gain CI's cooperation. CI has previously been arrested for Domestic Assault/Strangulation, Stalking/Intimidation, Harassing Communications, Possession of a Controlled Substance and Paraphernalia with the intent to use, Possession of Controlled Substances with the Intent to Distribute, and Theft. CI is specifically aware of the methods of packaging and the prices of the controlled substances because CI has used and/or has had associates who use these and other types of illegal drugs and has accurately described this information to Investigators. CI has provided information that led to arrests and seizure of contraband. Based on CI's ability to conduct recorded, drug-related phone calls with a target individual, and observations of physical surveillance that corroborate CI's ability to order narcotics from a target individual, Investigators believe the information CI has provided to be credible and reliable.

///

**Summary of Probable Cause**

7. In June of 2026, Investigators met with the CI who provided information on a male fentanyl dealer operating in downtown Portland, Oregon known to the CI by the name "Minor." CI first learned about "Minor" after a fentanyl user advised the CI that the fentanyl "Minor" was selling was "really good." CI learned that "Minor" operated late at night and sold near the Plaid Pantry and Safeway in the area of SW 11th Avenue and SW Jefferson Street, in downtown Portland, Oregon. I know from my training and experience that this area experiences a high volume of drug trafficking activity. The CI was subsequently introduced to "Minor" and was advised by "Minor" that he sold large quantities and that his stuff was "clean." I know from my training and experience that the term "clean" is drug talk for narcotics that are much purer in form and free of other adulterants such as cutting agents. The CI also described "Minor" as a Hispanic male who they believe was 5'8" with tattoos on his neck.

8. As Investigators continued their Investigation into "Minor," the CI learned in early August of 2026, that "Minor" was no longer operating in the same area but had moved his operation to a secluded bike path in the Goose Hollow neighborhood in Portland, Oregon, just southwest of "Minor's" original dealing location. The CI also learned through fentanyl users that "Minor" was actively selling in the late-night hours. During the week of August 17, 2026, the CI was able to confirm that "Minor" was still actively selling fentanyl and was operating near a bike path near SW Mill Street Terrace and SW 18th Avenue, in Portland, Oregon. CI also advised seeing a line of customers and confirmed with these customers that they were waiting for a fentanyl dealer to arrive who the CI suspected was "Minor."

///

*August 21, 2026, Arrest (National Fentanyl Prevention and Awareness Day)*

9. Using the information above and during the late-night hours of August 20, 2026, Investigators setup surveillance in the suspected area where it was believed "Minor" would appear to sell fentanyl that night. The CI who broadcasted information from a distance, advised Investigators that suspected customers were lining up in the area waiting to meet a fentanyl dealer who the CI suspected was "Minor." At approximately 11:58 p.m. the CI learned through a substance user that the fentanyl dealer had arrived and was wearing a black and red jacket.

10. Shortly thereafter, now in the very early morning hours of August 21, 2026, Investigators who were surveilling the bike trail saw a small group of transients and suspected drug users surrounding a Hispanic male, who was wearing a red hoodie, near the bike trail area between SW 18th Avenue and SW 16th Avenue, in downtown Portland, Oregon. Investigators could see the Hispanic male had a white compacted "brick" of what Investigators believed to be drugs in his left hand, providing them probable cause to arrest the suspected drug dealer. Investigators wearing police uniforms and placards, moved towards the suspected dealer and observed the male subject attempt to turn away from Investigators and toss the bag containing the suspected fentanyl into a nearby bush. The subject, later identified as **GERSON HERNANDEZ-RAMOS (HERNANDEZ-RAMOS)** was subsequently taken into custody.

11. During a search incident to arrest, Investigators located a large clear plastic bag containing suspected fentanyl inside the pocket of **HERNANDEZ-RAMOS**' red hoodie. Investigators also located numerous small-denomination bills separated between both of **HERNANDEZ-RAMOS**'s pants pockets, which based on the Investigator's training and experience they know that street-level drug transactions frequently involve cash payments, which dealers commonly place into readily accessible pockets following individual transactions.

12. Investigators also conducted a search of the area where the suspected narcotics were believed to be thrown and an additional bag containing suspected fentanyl, as well as a separate chunk of suspected fentanyl outside of the bag were recovered. Additionally, a digital scale containing white powdery residue was located open and immediately adjacent to the area where Investigators had initially observed **HERNANDEZ-RAMOS** when he was surrounded by the group of transients and suspected drug users. **HERNANDEZ-RAMOS** was subsequently arrested.

13. The seized suspected narcotics were taken to PPB's Central Precinct to weigh and field test. Investigators tested samples of the suspected fentanyl powder using a MobileDetect test kit and received a presumptively positive (+) result for fentanyl, a Schedule II controlled substance. I have found MobileDetect to be a reliable way to field test controlled substances with subsequent forensic analysis regularly confirming the initial results. In summary, Investigators seized three separate baggies containing a combined approximate total weight of 251.2 grams of fentanyl, a digital scale, packaging material, two (2) cellular phones, two (2) working walkie talkies and approximately $168 in U.S. Currency believed to be from the sales of narcotics. Below is an image of some of the seized items:

///

///

///




14. While Investigators processed the evidence, **HERNANDEZ-RAMOS** was held in a detention cell awaiting to be interviewed. A Spanish speaking Investigator advised **HERNANDEZ-RAMOS**, a Spanish speaker, of his constitutional *Miranda* rights in Spanish. **HERNANDEZ-RAMOS** acknowledged his *Miranda* rights and declined to talk to Investigators. The interview was subsequently terminated and **HERNANDEZ-RAMOS** was lodged at the Multnomah County Detention Center on federal charges.

15. Following the arrest, I sent a photo of **HERNANDEZ-RAMOS** to the CI, and they positively identified **HERNANDEZ-RAMOS** as the fentanyl dealer they knew as "Minor." During a law enforcement database search of **HERNANDEZ-RAMOS**, I discovered that **HERNANDEZ-RAMOS** had an alias of "Minor Hernandez."

16. I very familiar with how fentanyl dealers operate, and I know that fentanyl traffickers are increasingly selling both bulk fentanyl powder and counterfeit prescription pills manufactured with fentanyl, a Schedule II controlled substance. I know that fentanyl powder is typically a white to off-white powder. Since different weights of powdered fentanyl sell for different amounts, I know that drug dealers selling fentanyl powder will often either prepackage the fentanyl in various predetermined weights for sale or possess a scale to weigh the amount of powder fentanyl they are selling. I also know drug dealers selling powdered fentanyl, which they will often possess in bulk/larger amounts, will often possess additional packaging materials to repackage the drugs they are selling to their customer. Depending on their level of addiction, I know that a user of powdered fentanyl will typically buy it in quantities of between less than a gram to several grams at a time and use it in quantities of much less than 1/10 of a gram. I know that dealers of powdered fentanyl will often buy fentanyl in larger quantities and then break off and sell it in smaller qualities of between several grams to a gram or less. I know that a person possessing more than 10 grams of fentanyl powder does not possess it for personal use but rather such a quantity clearly indicates that it is possessed for purposes of further distribution. A person possessing more than 10 grams of fentanyl powder, along with a scale and additional packaging material also indicates that the fentanyl is not possessed for personal use but rather for purposes of further distribution

## Conclusion

17. Based on the foregoing, I have probable cause to believe, and I do believe, that **HERNANDEZ-RAMOS** has committed the felony crime of Possession with Intent to Distribute 40 grams or more of Mixture and Substance containing Fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(B). I

therefore request that the Court issue a criminal complaint and arrest warrant for **HERNANDEZ-RAMOS**.

18. Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney Scott Kerin. AUSA Kerin advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*
Bobby Gutierrez, Special Agent
Federal Bureau of Investigation

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 1:20 ~~a.~~m./p.m. on August ~~21~~ 22, 2026.

Jolie A. Russo
HONORABLE JOLIE A. RUSSO
UNITED STATES MAGISTRATE JUDGE